**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                           )
**UNITED STATES OF AMERICA**               )
                                           )
                                           )
                                           )
     **v.**                                )          **Criminal Case No. 04-128-03 (RMC)**
                                           )
**JOSEPH L. BLACKSON,**                    )
                                           )
          **Defendant.**                   )
_____    )

**OPINION**


Joseph Blackson filed a *pro se* motion to vacate, set aside, or correct his sentence

under 28 U.S.C. § 2255.  *See* Def.'s Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or

Correct Sentence [Dkt. 1268].  For the reasons explained below, the Court will deny the motion.

## I.    BACKGROUND

The motion arises from a long and complicated set of criminal convictions after a

joint investigation by the Federal Bureau of Investigation (FBI) and the District of Columbia

Metropolitan Police Department (MPD) into a group of drug dealers in D.C. known as the "M

Street Crew."  The investigation resulted in two indictments: *United States v. Babson*, 04-cr-127,

charging persons in New York, California and elsewhere with supplying drugs to the D.C.-based

M Street Crew, and *United States v. Franklin,* 04-cr-128, the instant case, charging alleged Crew

members.  In all, about forty (40) persons were charged and were convicted or pled guilty.

As relevant here, Mr. Blackson was charged in a 159-count superseding

indictment that also named 18 other defendants and alleged a host of federal crimes relating to a

narcotics conspiracy.  *See* Superseding Indictment [Dkt. 386].  Through testimony, pole camera

footage, wiretaps of phone calls, and audio recordings, the evidence convinced the jury that Jonathan Franklin led the M Street Crew as a cohesive and hierarchical business and social unit.

Mr. Blackson is the half-brother of Mr. Franklin, and the government argued he was a "lieutenant" to Mr. Franklin.  After trial of five alleged M Street Crew members, the jury convicted all, including Mr. Blackson, of conspiracy to distribute and possess with intent to distribute phencyclidine, ecstasy and cocaine base, also known as crack cocaine; conspiracy to participate in a Racketeer Influenced Corrupt Organization (RICO); multiple counts of drug distribution; violent crimes; and numerous gun offenses.  *See* Verdict [Dkt. 552].  On August 31, 2006, this Court sentenced Mr. Blackson to 35 years in prison, followed by 10 years of supervised release.  The sentence included an enhancement stemming from the Court's finding that Mr. Blackson served as a "lieutenant" in the M Street Crew.

Mr. Blackson appealed his convictions to the United States Court of Appeals for the District of Columbia Circuit, which affirmed all but one conviction.  *See United States v. Wilson*, 605 F.3d 985 (D.C. Cir. 2010).  The Circuit reversed Mr. Blackson's conviction on Count 31; this Count had alleged an incident of drug distribution, but the government had presented no evidence on it and told the Circuit that the judgment was in error.  *Id.* 605 F.3d at 1032.  On remand, this Court found no reason to disturb Mr. Blackson's original sentence.  *See* Tr. of Sentencing on Remand [Dkt. 1218] at 22:8-23:10.

Mr. Blackson filed the instant motion on November 7, 2014, in which he alleges ineffective assistance of trial and appellate counsel, and asks the Court to vacate his convictions or, in the alternative, to hold an evidentiary hearing.  *See* Def.'s Mot. at 10.  In a letter accompanying his motion, Mr. Blackson stated that he intended to supplement the motion with supporting affidavits from potential defense witnesses who were not called by his trial counsel.

*See* Def.'s Nov. 7, 2014 Letter [Dkt. 1269]. He later supplemented his § 2255 motion with three

supporting affidavits, only one of which was signed. *See* § 2255 Supp. [Dkt. 1276]. The

government opposed the motion on May 7, 2015. *See* Pl.'s Opp. [Dkt. 1299]. Mr. Blackson

subsequently requested—and the Court granted—several extensions of time in which to file a

reply. Although he filed an unrelated Motion to Reduce Sentence [Dkt. 1314] during one

extension period, he did not submit any reply.

## II.

Section 2255 allows a federal prisoner to ask the sentencing court to vacate, set

aside or correct a sentence on the grounds that "the sentence was imposed in violation of the

Constitution or laws of the United States, or that the court was without jurisdiction to impose

such sentence, or that the sentence was in excess of the maximum authorized by law, or is

otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A claim of ineffective assistance of

counsel is one such collateral attack. A defendant must prove his claim by a preponderance of

the evidence. *See United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973); *see also Parker*

*v. United States*, No. CR 12-59 (EGS), 2016 WL 4148174, at *2 (D.D.C. Aug. 4, 2016).

Because "Section 2255 is not a substitute for a direct appeal," "in order to gain relief under any

claim, [the movant] is obliged to show a good deal more than would be sufficient on a direct

appeal from his sentence." *United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992)

(citing *United States v. Frady*, 456 U.S. 152, 165 (1982)); *see also Parker*, 2016 WL 4148174, at

*2 (applying *Pollard* standard).

A hearing need not be held on a § 2255 motion when "the motion and the files

and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C.

§ 2255(b); *see also United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996). To warrant a

3

hearing, the petitioner's Section 2255 motion must "raise 'detailed and specific' factual allegations whose resolution requires information outside the record or the judge's personal knowledge or recollection." *United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir. 1992) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). "When a § 2255 motion involves ineffective assistance of counsel, a hearing is not required if the district court determines that the 'alleged deficiencies of counsel did not prejudice the defendant.'" *United States v. Weaver*, 234 F.3d 42, 46 (D.C. Cir. 2000) (quoting *United States v. Sayan*, 968 F.2d 55, 66 (D.C. Cir. 1992)). Further, "a district judge's decision not to hold an evidentiary hearing before denying a § 2255 motion is generally respected as a sound exercise of discretion when the judge denying the § 2255 motion also presided over the trial in which the petitioner claims to have been prejudiced." *Morrison*, 98 F.3d at 625.

### III.

Mr. Blackson complains that his trial and appellate lawyers provided him with ineffective assistance. Def.'s Mot. at 5–13. To prevail, he must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) this "deficient performance prejudiced the defense," meaning "counsel's errors were so serious as to deprive the defendant of a fair trial." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Strickland*'s framework "requires (1) showing 'counsel's representation fell below an objective standard of reasonableness' and (2) demonstrating 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008) (quoting *Strickland*, 466 U.S. at 687–88, 694).

4

At the outset, the Court finds that no evidentiary hearing is required in this case. Having presided over Mr. Blackson's trial and sentencing (and all other proceedings involving the M Street Crew and its suppliers), this Court is familiar with the facts and issues of the case. Further, as discussed *infra*, the parties' briefs and record sufficiently demonstrate that Mr. Blackson is not entitled to relief.  The Court therefore proceeds to the merits of Mr. Blackson's claims.

### A.  Ineffective Assistance of Trial Counsel

Mr. Blackson first alleges ineffective assistance of his trial counsel, John Carney. Mr. Blackson alleges that Mr. Carney: (1) failed to interview and present three potential defense witnesses (Eric Edwards, Maurice Robinson, and Vincent Blackson, with corroboration from Jacqueline Franklin);[1] (2) failed to tell Mr. Blackson that a defendant decides for himself whether to testify and that Mr. Blackson in fact wanted to testify; and (3) failed to argue at sentencing that Mr. Blackson could not have foreseen, and should not have been responsible for, certain narcotics distributed by the M Street Crew in 2003 while Mr. Blackson was held at the D.C. Jail on a related charge.  Def.'s Mot. at 5a-5e.

### 1.  Failure to Present Witnesses

Mr. Blackson asserts that Eric Edwards, Maurice Robinson, and Vincent Blackson, if called, would have rebutted prosecution testimony about the structure of the M Street Crew, with Jonathan Franklin as the leader, Mr. Blackson and others as lieutenants, and the rest of the Crew as "foot soldiers." *Id.* at 5b-5d.  In support, Mr. Blackson has submitted an affidavit signed by Vincent Blackson and two unsigned affidavits that proffer the expected testimony from Eric Edwards and Maurice Robinson.  § 2255 Supp.  According to Mr. Blackson,

---

[1]  Vincent Blackson is Mr. Blackson's uncle and Ms. Franklin is his mother.

he told Mr. Carney about the importance of these witnesses and Mr. Carney had included them

on a list of possible defense witnesses.  Nonetheless, Mr. Carney did not present any one of these

three witnesses.  *Id.* at 5a.  Mr. Blackson further asserts that Maurice Robinson attempted to

provide Mr. Carney with supplemental information, but Mr. Carney failed to return his phone

call or to investigate.  *Id.* at 5d.

      The affidavits indicate that all three witnesses would have contradicted the

government's witness, cooperator Michael Abney, and testified that the M Street Crew lacked

any structure and that Mr. Blackson played no leadership role in it.  *See* Aff. of Eric Edwards, §

2255 Suppl. 4; Aff. of Maurice Robinson, § 2255 Suppl. 3;  Aff. of Vincent Blackson, § 2255

Suppl. 1–2.  Although Mr. Blackson argues that Jacqueline Franklin would have corroborated

this testimony, no affidavit from Ms. Franklin was submitted.  Mr. Blackson argues that

additional testimony would have been forthcoming from these witnesses, although not contained

in their affidavits, *i.e.*, that Mr. Robinson called Mr. Carney to provide more information and Mr.

Carney never returned the call, and that Mr. Robinson encountered Michael Abney on the street

and Mr. Abney said that he would testify to whatever the government wanted in order to get a

sentencing deal for himself.  *See* Def.'s Mot. at 5d.

      The Court accepts the unsigned affidavits concerning the anticipated testimony of

Messrs. Edwards and Robinson as proffers by Mr. Blackson, with less significance than Vincent

Blackson's executed affidavit.  Mr. Blackson's argument that Mr. Robinson would testify further

about Michael Abney and Mr. Carney's failure to follow up also constitutes a proffer.

Nonetheless, the content of the Vincent Blackson affidavit and Mr. Blackson's proffers is

insufficient to demonstrate that Mr. Carney failed an objective standard of reasonableness and

violated prevailing professional norms.  *See United States v. Askew*, 88 F.3d 1065, 1071 (D.C.

Cir. 1996) (citing *Strickland*, 466 U.S. at 688).  As Mr. Blackson acknowledges, Mr. Carney was

(1) aware of the three potential witnesses, (2) had considered putting them on the stand, and (3)

made an intentional decision not to call them based on Mr. Carney's assessment of the

proceedings.  *See* Def.'s Mot. at 5a-5d.  Mr. Blackson also acknowledges that the law affords

trial counsel great deference concerning these kinds of strategic decisions.  Def.'s Mot. at 5d; *see*

*also United States v. Toms*, 396 F.3d 427 (D.C. Cir. 2005).  Even with the benefit of hindsight,

the Court has no reason to question Mr. Carney's judgment.

Mr. Blackson equally fails to meet the prejudice prong of the *Strickland*

framework.  "To show prejudice, a defendant basing an inadequate assistance claim on his or her

counsel's failure to investigate must make 'a comprehensive showing as to what the

investigation would have produced.  The focus of the inquiry must be on what information would

have been obtained from such an investigation and whether such information, assuming its

admissibility in court, would have produced a different result.'"  *Askew*, 88 F.3d at 1073 (quoting

*Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987)).[2]

The gravamen of the witnesses' testimony would have been that (1) no organized

entity called the M Street Crew actually operated in and around 17th and 18th Streets and M

Street, N.E., and (2) Mr. Blackson held no leadership position.  As to the first point, the

Government presented considerable cooperator testimony; video and audio recordings of Crew

---

[2] While, per *Askew*, the Court proceeds as if the testimony of the three witnesses would be admissible, there are serious questions as to whether that would be the case.  At trial, the Court refused to admit the testimony of certain residents of the neighborhood who did not have firsthand knowledge of the Crew's operation; this ruling was upheld on appeal.  *Wilson*, 605 F.3d at 1025. "A witness with firsthand experience of a particular drug operation may testify under Rule 701." *Id.*  Mr. Blackson offers no indication that any of his potential witnesses had such experience with the M Street Crew, only that they were residents of the area and could observe Crew members in action.

7

members talking with undercover law enforcement; wiretaps of telephone conversations between Crew members; and many photographs to establish the existence of the M Street Crew and the recognition it garnered, including at late-night hotspots where its members regularly received a "shout-out" when they entered.   The evidence is too extensive to revisit in detail here but it makes it highly unlikely that witness testimony to the contrary would have changed the outcome of the case in any material way.  As the D.C. Circuit said, "the evidence against Blackson on drug distribution was overwhelming." *Wilson*, 605 F.3d at 1010.  As to the second point, the D.C. Circuit has already held that the government's evidence was sufficient to establish Mr. Blackson's leadership role in the M Street Crew. *Id.* at 1039.  These potential witnesses, two of whom are interested relatives of Mr. Blackson, would have offered only a partial rebuttal to Mr. Abney's testimony, which the jury appears to have credited in its entirety or close thereto.  In light of the full record, it cannot be said there is a reasonable probability that testimony from these witnesses would have changed the outcome of the proceedings.   The Court concludes that Mr. Blackson has failed to establish by a reasonable probability that if these three witnesses had testified, their testimony would have produced a different outcome at trial. *See Strickland*, 466 U.S. at 694.

## 2.  Failure to Inform of Right to Testify

Mr. Blackson asserts that Mr. Carney did not inform him that "the ultimate decision whether or not to testify at his trial was his sole decision to make."  Def.'s Mot. at 5e; *see also* Aff. of Joseph L. Blackson [Dkt. 1268-1] at ¶ 2 ("That I told Counselor Carney that I wanted to testify on my own behalf and he originally did not tell me no . . . .");  Mr. Blackson contends that Mr. Carney usurped his right to make the final decision.

The D.C. Circuit has instructed that *Strickland* applies to the analysis of ineffective assistance of counsel claims premised on a denial of a defendant's right to testify. *See United States v. Tavares*, 100 F.3d 995, 998 (D.C. Cir. 1996).  A court must "continue to assign special significance to the defendant's precluded right to testify and at the same time to inquire whether it is reasonably probable that the defendant's testimony would have changed the outcome of the trial in his favor," as a defendant's testimony in some cases is likely to have no impact or even a negative impact at trial.  *Id.*  As Mr. Blackson recounts, Mr. Carney feared that his testimony would have a negative impact because the government could introduce "more bad character evidence" against him.  Blackson Aff. ¶ 3.  This reasoning certainly evidences a legitimate analysis even if arguable to Mr. Blackson.

More critically, the trial transcript contradicts Mr. Blackson's claim that Mr. Carney usurped his right to decide for himself whether to testify.  On May 16, 2006, the Court informed all defendants of their constitutional right to testify in their own defense and inquired of each whether this decision had been discussed between the defendant and his counsel.  *See* 5/16/2006 a.m. Trial Tr. at4:1-7:25 ("THE COURT: I need to be sure and ask each of the Defendants and explain to each of you gentlemen that you have a right to testify in your own defense.  You have a constitutional right to get up on the stand and testify in your own defense.").  Mr. Blackson stated on the record that he did not want to exercise his right to testify. *Id.* (THE COURT: Mr. Blackson, do you want to testify? You have a right to testify if you choose to do so, sir . . . DEFENDANT BLACKSON: No. No, Your Honor.").  Mr. Blackson expressly stated that he had discussed such testimony with Mr. Carney and that he did not want to testify.  The Court asked him:  "Mr. Blackson, you agree that you've had many conversations about this and have decided on your own that you don't want to testify, right?" to which Mr. Blackson replied "I have, but I don't want to testify."  *Id.*  This colloquy makes clear that Mr.

Blackson had been informed of his right to testify on his own behalf and specifically agreed that he had decided "on [his] own" not to testify. *Id.* In his arguments now, he has given the Court no reason to believe that his contemporaneous statements on the subject were not accurate.

Mr. Blackson has not demonstrated that Mr. Carney prevented him from testifying and he has demonstrated that Mr. Carney had a legitimate concern about the impact of such testimony. There is no evidence of ineffective assistance of counsel.

### 3. Failure to Argue Foreseeability of Drug Quantities

Mr. Blackson also claims ineffective assistance of counsel for "failing to argue and present evidence that neither the amounts of crack or PCP was not proved foreseeable to petitioner, nor was the 30 kilograms of PCP." Def.'s Mot. at 13. He asserts that since he was incarcerated during "a large portion of 2003," following his arrest on July 29, 2003, he should not have been held responsible for the distribution of large quantities of crack cocaine and PCP during that year, an argument he claims trial counsel did not advance. *Id.*; *Wilson*, 605 F.3d at 1037.

Mr. Blackson mis-remembers the record of this case as it relates to him, which is not surprising because there are over 1,200 docket entries concerning Mr. Blackson alone. The question of the degree to which Mr. Blackson could have foreseen the extent of drug dealing by the M Street Crew arose at sentencing and not at trial. *Apprendi v. New Jersey,* 530 U.S. 466 (2000), requires a jury to make special findings of fact, and the court at sentencing makes findings as to relevant conduct under the sentencing guidelines. While the jury convicted Mr. Blackson of the narcotics conspiracy and found that 30 kilograms of PCP were proved, *see* Verdict [Dkt. 552], the Court was required to make individual particularized findings of fact about the joint activity to determine what he actually knew and what conduct was reasonably foreseeable to him. *See* U.S. Sentencing Guidelines Manual (2004), § B1.3 Application Note 2;

s*ee also United States v. Edmond*, 52 F.3d 1080, 1106 (D.C. Cir. 1995) (remanding for specific individualized findings regarding the quantity of drugs each defendant might have reasonably foreseen).  In other words, once guilt was proved, the degree to which any individual member of the M Street Crew could foresee the quantities of drugs involved was a determination that affected their sentences, not guilt.

The Probation Office prepared a Presentence Investigation Report (PSR), which was shared in draft form with Mr. Blackson and Mr. Carney.  Mr. Carney protested the PSR's conclusion that Mr. Blackson as a co-conspirator was responsible for the full amount of drugs handled by the M Street Crew and brought that protest to Mr. Blackson's sentencing hearing. *See* 8/31/06 Sentencing Tr. [Dkt. 830] at 8:1–15:25.  Mr. Blackson filed a *pro se* Motion for Hearing on PSI Report on August 17, 2006, because he "object[ed] to being held responsible for 30 or more kilo-grams [sic] of Phencyclidine (also known as PCP) and for 50 grams or more of cocaine base (also known as crack)."  *See* Motion for Hearing on PSI Report [Dkt 626] ¶ 1.

> To support these objections Defendant Blackson points to the fact that he was incarcerated from July 29, 03 until present, which made it impossible for Blackson to reasonably foresee the amount of PCP allegedly distributed between July 29, 03 thru March 16, 04.

*Id.*  In light of Mr. Carney's objections and Mr. Blackson's motion, the Court heard argument and explicitly considered whether the evidence supported finding that Mr. Blackson remained a knowledgeable co-conspirator after his arrest.  *See* 8/31/06 Sentencing Tr. [Dkt. 830] at 8–15, 50–64.  Ultimately, it ruled that Mr. Blackson could be held responsible for the whole amount of PCP.

The issue of foreseeability was then raised again in Mr. Blackson's direct appeal, in which he challenged the finding that he was responsible for thirty or more kilograms of PCP.

*Wilson*, 605 F3d at 1036–37.  Based on the evidence presented at trial as to the conspiracy and

Mr. Blackson's association with the distribution of drugs, the D.C. Circuit affirmed the district

court's findings that Mr. Blackson "'had direct knowledge of the growth of the scope of the

conspiracy;'" he "'never withdrew from the conspiracy;'" and he "'immediately went back to

trafficking'" upon release.  *Wilson*, 605 F.3d at 1037. The Circuit agreed that Mr. "Blackson had

sufficient involvement in the conspiracy to reasonably foresee the amount of PCP sold."  *Id.*

      Because Mr. Carney raised the issue of foreseeability at the right time and argued

it at the sentencing hearing, the Court finds no insufficiency of trial counsel.

### B.  Ineffective Assistance of Appellate Counsel

      Mr. Blackson also asserts that his appellate counsel, Richard K. Gilbert, provided

ineffective counsel by failing to argue that the Government had not fully disclosed information

about the "unethical conduct" of a prosecution witness, Officer Donna Leftridge.  Officer

Leftridge was an undercover MPD officer who took part in the investigation of the M Street

Crew and became a key witness at trial.  In March 2006, during trial, she was also the subject of

an MPD Internal Affairs Division investigation and was suspended with pay; Officer Leftridge

did not know why she was under investigation.  This Court required notice to defense counsel

about the investigation and suspension, but without details as to the reason for the investigation,

concluding that it was based on an unrelated matter that had "limited relevance to her credibility

or any potential bias."  *Wilson*, 605 F.3d at 1003–04.  Mr. Blackson claims appellate counsel

erred by not arguing that the Court's rulings violated the Confrontation Clause in the Sixth

Amendment and that the Government's failure to disclose the complete nature of the

investigation of Officer Leftridge constituted a violation of *Brady v. Maryland*, 373 U.S. 83

(1963).[3]  Mr. Blackson also alleges that Officer Leftridge was "involved intimately with drug

dealers associated with petitioner's case or individuals connected to petitioner [sic] case."  Def.'s

Mot. at 14.

Mr. Blackson and his co-defendants raised these same arguments relating to

Officer Leftridge on appeal and the D.C. Circuit rejected them.  *See Wilson*, 605 F. 3d at 1002

("First, all appellants argue that their cross-examination of the government's key witness, Officer

Donna Leftridge, was improperly limited in violation of the Confrontation Clause.")  The

*Franklin* Defendants argued, *inter alia*, that this Court erred in not allowing discovery to find out

the reason behind the Internal Affairs investigation of Officer Leftridge. They also argued that

Officer Leftridge began a personal relationship with Mr. Franklin, separate from her undercover

work, and that the Court further erred in prohibiting a cross-examination of Officer Leftridge

about those alleged social contacts.  *Id.* at 1003.

On May 25, 2010, the D.C. Circuit rejected these arguments and affirmed the

conviction and sentence.  While it found the Government did have a *Brady* obligation to disclose

more about the investigation into Officer Leftridge for impeachment purposes, it concluded that

this error was not material because there was not "a reasonable probability that the result of the

trial would have been different if the suppressed [evidence] had been disclosed to the defense."

*Id.* at 1007.  As to the alleged inappropriate personal relationship, the D.C. Circuit held that even

if the trial judge had erred in denying cross-examination on this subject, there was not enough

---

[3] *Brady* requires federal prosecutors to disclose to a criminal defendant all information that is or
might be favorable and material either to guilt or punishment.  Impeachment evidence must also
be disclosed.  There are three elements to a *Brady* claim, which implicates Due Process rights
under the Fifth Amendment: "The evidence at issue must be favorable to the accused, either
because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by
the [Government], either willfully or inadvertently; and prejudice must have ensued."
*Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

evidence to demonstrate prejudice, as required for a claim under the Confrontation Clause, especially given "the overwhelming evidence of appellants' guilt." *Id.* at 1013-14.

Mr. Blackson has not articulated how counsel's performance in appealing this issue was deficient nor has he contended there was an intervening change in the law as an exception to issues already litigated on appeal. Because counsel argued the underlying issue to the Circuit, which rejected it, the Court sees no likelihood of prejudice in any actions by the appellate counsel.

## IV.  CONCLUSION

For the foregoing reasons, the Court will **DENY** Joseph Blackson's Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255 [Dkt. 1268]. A memorializing Order accompanies this opinion.

Date: February 15, 2017                        _____/s/_____
                                               ROSEMARY M. COLLYER
                                               United States District Court